**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JAMES P. FAVA,**

                                        **Plaintiff,**

    **v.**                                                      **9:20-CV-156**
                                                                 **(TJM/TWD)**


**JOSEPH T. WARD, JR., in his individual**
**capacity and official capacity as Superintendent**
**of Mid-State Correctional Facility, PARKER C.**
**BRYANT, in his individual capacity and official**
**capacity as a Tier III Hearing Officer and employee**
**of Mid-State Correctional Facility, LIEUTENANT**
**LLOYD J. REYNOLDS, in his individual capacity**
**and official capacity as Lieutenant at Mid-State**
**Correctional Facility; RYAN A. ALBRIGHT, in his**
**individual capacity and his official capacity as a**
**correction officer at Mid-State Correctional Facility;**
**ANNE M. JOSLYN, in her individual capacity and her**
**official capacities as Deputy Superintendent of**
**Programs and Chair of the Time Allowance**
**Committee at Mid-state Correctional Facility, and**
**JOHN DOE, a name being used to describe the**
**acts of a Mid-State Correctional Facility correction**
**officer whose identity is currently unknown, in his**
**individual capacity and his official capacity as a**
**correction officer at Mid-State Correctional**
**Facility,**

                                        **Defendants.**
_____

**THOMAS J. McAVOY,**
**Sr. U. S. District Judge**

## DECISION & ORDER

Before the Court is Defendants' motion to dismiss this case in which Plaintiff alleges

1

that Defendants violated his constitutional rights in disciplinary proceedings at Mid-State Correctional Facility in Marcy, New York.  See dkt. # 11.  He seeks relief pursuant to 42 U.S.C. §§ 1983 and 1988.  The parties have briefed the issues and the Court has determined to resolve the matter without oral argument.

## I.    BACKGROUND

At the times relevant to this litigation, Plaintiff James P. Fava was an inmate at Mid-State Correctional Facility, an institution operated by the New York State Department of Corrections and Community Supervision ("DOCCS").  Complaint ("Complt."), dkt. # 1, at ¶ 10.  Defendant Joseph T. Ward, Jr., was Mid-State's Superintendent.  Id. at ¶ 3.  Defendant Parker C. Bryant served as Tier III Hearing Officer at Mid-State, while Defendant Flloyd J. Reynolds worked as a Lieutenant there.  Id. at ¶¶ 4-5.  Defendant Ryan A. Albright served as a correction officer.  Id. at ¶ 6.  Defendant Anne M. Joslyn was Deputy Superintendent of Programs at Mid-State.  Id. at ¶ 7.

On October 26, 2016, Defendant Reynolds prepared and issued a Tier III Inmate Misbehavior Report to Plaintiff.  Id. at ¶ 11.  The report alleged that Defendant Albright had seen Plaintiff pass a piece of paper to another inmate, Pablo Goico, on October 23, 2016.  Id. at ¶ 11.  Albright saw Goico tear that paper up and put the pieces in his shirt pocket.  Id.  Goico turned the pieces of paper over to Albright, and Albright taped them back together.  Id.  Albright claimed that the piece of paper he taped back together contained a detailed scheme for smuggling drugs into Mid-State.  Id.  As a result of these allegations, someone at Mid-State placed Plaintiff in the Special Housing Unit ("SHU"), a part of the prison often referred to as the "Box."  Id. at ¶ 12.  Plaintiff received the Tier III Inmate Misbehavior Report on or about October 28, 2016.  Id. at ¶ 13.  The report alleged that Plaintiff had (1)

2

conspired to possess or sell narcotics and (2) been involved in smuggling.  Id.

On November 1, 2016, Plaintiff appeared before Defendant Bryant, who had been appointed as hearing officer by Defendant Ward, for a Tier III disciplinary hearing.  Id. at ¶ 14.  Bryant read the charges to Plaintiff and asked him how he pled.  Id.  at ¶ 15.  Plaintiff denied all of the allegations.  Id.  Bryant then adjourned the hearing until November 17, 2016 to facilitate taking testimony.  Id.  The facility recorded the hearing on tape.  Id.

Bryant reconvened the disciplinary hearing on November 17, 2016.  Id. at ¶ 16.  The facility again recorded the session.  Id.  Defendant Reynolds gave testimony by telephone.  Id. ¶ 17.  Reynolds testified that Officers Albright and Wright gave him a piece of paper that had been ripped up.  Id. at ¶ 18.  Reynolds opined that the paper contained "an elaborate scheme to smuggle drugs into the facility."  Id.

Plaintiff alleges that Defendant Reynolds gave false testimony.  Id. at ¶ 19.  Plaintiff contends that Reynolds "testified falsely without reviewing or investigating any of the relevant and undisputed facts that favored Plaintiff Fava."  Id.  Plaintiff alleges that Defendant Reynolds acted deliberately and "for the sole purpose of punishing Plaintiff Fava without justification and to deprive him of his right to due process under the 4th Amendment to the United States Constitution."  Id.  Plaintiff testified and denied any knowledge of the paper about which Reynolds spoke.  Id. at ¶ 20.  Another inmate, Barber, testified that he was near Plaintiff when he supposedly passed Goico the paper.  Id. at ¶ 22.  Barber stated that he never saw paper passed by Plaintiff to Goico or anyone else.  Id.  Goico testified that he had the paper when he was at Marcy Correctional Facility and been disciplined for it.  Id. at ¶ 24.  The paper was in his pocket, torn up, and an officer confronted him as he was trying to throw the paper in the trash.  Id.  Goico testified that he had fist-bumped

3

Plaintiff, not traded paper with him, and that Plaintiff had no knowledge of the paper in question.  Id.  Plaintiff contends that Mid-State disciplined Goico for the paper.  Id. at ¶ 25. Another inmate, Mashtare, also testified that he never saw Fava pass a piece of paper or anything else to Goico.  Id. at ¶¶ 26-27.  Another inmate, Baston, also testified that he saw Fava give Goico a fist bump but did not see him pass any paper.  Id. at ¶ 28.

Defendant Albright served as the last witness.  Id. at ¶ 29.  Albright testified that he watched Fava pass a white piece of paper, folded up, to Goico on October 23, 2016.  Id. Goico, Albright claimed, attempted to hide the paper.  Id. Plaintiff claims that this testimony was false, and that Albright "testified falsely without reviewing or investigating any of the relevant and undisputed facts that favored Plaintiff Fava."  Id. at ¶ 30.  Albright allegedly acted deliberately and "for the sole purpose of punishing Plaintiff Fava without justification and to deprive him of his right to due process[.]"  Id.  No one produced the paper at the hearing; Plaintiff alleges, on information and belief, that correctional personnel either lost or destroyed the paper before the hearing.  Id. at ¶¶ 31-32.  Defendant Bryant never asked Defendant Reynolds or Defendant Albright about the location of the paper at the hearing. Id. at ¶ 38.

After the testimony ended, Defendant Bryant recessed and then returned to the hearing room to make a decision.  Id. at ¶¶ 33-34.  Bryant ruled that Fava and the other inmates offered consistent testimony, but that Defendant Albright also offered "clear, concise, and credible" testimony.  Id. at ¶ 34.  Bryant also found that the piece of paper in question had "clear instructions on how to smuggle drugs into the facility."  Id. at ¶ 35. Bryant came to this conclusion "without investigating Inmate Goico's testimony that he had possessed" that paper while held at Marcy Correctional Facility before October 23, 2016.

4

Id. at ¶ 36.  Defendant Bryant, Plaintiff claims, "deliberately ingnored" Goico's testimony

solely "to punish Plaintiff Fava without justification" and deprive him of his due process

rights.  Id. at ¶ 37.   Bryant's failure to ask about the location of the paper at the hearing

also served this alleged purpose.  Id. at ¶ 38.

On or about December 7, 2016, the Facility Time Allowance Committee at Mid-State

reviewed the matter and Bryant's conclusions.  Id. at ¶ 39.  Defendant Joslyn chaired the

Committee.  Id.  Joslyn concluded that Plaintiff should lose all the "good time" he had

accumulated.  Id. at ¶ 40.  Joslyn did not review "any of the relevant and undisputed facts

that favored Plaintiff."  Id.  Joslyn, Plaintiff claims, acted deliberately "for the sole purpose

of punishing Plaintiff Fava without justification and to deprive him of his right to due

process[.]"  Id.  Defendant Ward, as Superintendent at Mid-State, confirmed Joslyn's

recommendation of removing all of Plaintiff's good-time credit on December 13, 2016.  Id.

at ¶ 41.  Plaintiff alleges that Ward reached this decision without reviewing the relevant

record that favored the Plaitniff.  Id.  Ward did so, Plaintiff claims, deliberately and for the

purpose of depriving Plaintiff of his due process rights.  Id.   Before these events and

decisions, Plaintiff had sufficient "good time" to expect he would be released from custody

on December 28, 2016.  Id. at ¶ 42.

Plaintiff filed a timely Appeal to the Office of the Commissioner of DOCCS in Albany,

New York Id. at ¶ 43.  On February 14, 2017, D. Venettozzi, Director of Special

Housing/Inmate Disciplinary Program issued a Review of the Superintendent's hearing that

reversed the outcome of the hearing.  Id. at ¶ 44.

Plaintiff filed his Complaint on February 13, 2020.  The Plaintiff proceeds pursuant

to 42 U.S.C. § 1983, alleging a violation of his constitutional rights by state actors.  The

Complaint contains two counts.  The first count alleges that Defendants violated Plaintiffs'

due process rights pursuant to the "Fourth, Eighth, and Fourteenth Amendments" when

they "illegally, improperly and without justification placed" Plaintiff in the Special Housing

Unit from October 23, 2016 until February 27, 2017.  Count Two alleges a due process

violation of the same sort when Defendants they placed Plaintiff in solitary confinement and

held him in custody for sixty-two days beyond his conditional release date of December 28,

2016.

Plaintiff served Defendants with the Complaint and they responded by filing the

instant motion to dismiss.  The parties briefed the issues, bringing the case to its present

posture.

## II.     LEGAL STANDARD

Defendants have filed a motion to dismiss Plaintiff's claims pursuant to Federal Rule

of Civil Procedure 12(b)(6).  Defendant argues that Plaintiff has not stated a claim upon

which relief could be granted, even if all factual allegations in the complaint were proved

true.  In addressing such motions, the Court must accept "all factual allegations in the

complaint as true, and draw[] all reasonable inferences in the plaintiff's favor."  Holmes v.

Grubman, 568 F.3d 329, 335 (2d Cir. 2009).  This tenet does not apply to legal

conclusions.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice."

Id. at 678.  "To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face."  Id. (quoting

Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)).  When, as here, the Plaintiff proceeds pro

se, the Court must "'construe [the complaint] broadly, and interpret [it] to raise the strongest

6

arguments that [it] suggests.'" Weixel v. Bd. of Educ. of N.Y., 287 F.3d 138, 146 (2d Cir.

2002) (quoting Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000)).  "This is especially true

when dealing with pro se complaints alleging civil rights violations."  Id.

## III.   ANALYSIS

Defendants seeks dismissal on several grounds, which the Court will address in

turn.

### A.   Failure to State a Claim

Defendants first argue that Plaintiff has failed to state a viable claim pursuant to 42

U.S.C. § 1983.  Defendants contend that Plaintiff has failed to allege facts sufficient to

state a procedural or substantive due process claim.  They also argue that he has not

alleged any facts sufficient to support his Fourth or Eighth Amendment claims against any

of the Defendants.  Plaintiff responds that he has described violations of his due process

rights by alleging that Reynolds and Albright introduced evidence at his disciplinary hearing

they knew was false, and Bryant violated those rights in the way he conducted the

disciplinary hearing.[1]

Defendants address arguments specifically to each of the Defendants.  After a

discussion of the general principles here, the court will address each Defendant in turn.

### i.   Section 1983 Liability

Plaintiff brings his claims pursuant to 42 U.S.C. § 1983.  That section provides that

---

[1]Plaintiff casts his argument as a response to Defendants' claim that they are entitled to qualified immunity.  Plaintiff's argument does not, however, address the standard for qualified immunity.  In substance, that argument appears to address whether he has alleged facts sufficient to support procedural or substantive due process claims against the Defendants.  The Court will address his arguments in that context.

"[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be" civilly liable to the injured party. 42 U.S.C. § 1983.  "To state a § 1983 claim, a plaintiff must establish that the defendant deprived him of a federal or constitutional right while acting under the color of state law." Cox v. Warwick Valley Cent. Sch. Dist., 654 F.3d 267, 272 (2d Cir. 2011).

Here, Plaintiff attempts to raise due process claims related to the disciplinary hearing to which the Defendants subjected him.  As a general matter, two types of due process rights exist in the Constitution: procedural and substantive due process.  As a general matter, a plaintiff alleging procedural due process violations must show "(1) that Defendants deprived him of a cognizable interest in 'life, liberty, or property,' (2) without affording him constitutionally sufficient process."  Proctor v. LeClaire, 846 F.3d 597, 608 (2d Cir. 2017) (quoting Wolff v. McDonnell, 418 U.S. 539, 550 (1974)).  "Prison discipline implicates a liberty interest when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Ortiz v. McBride, 380 F.3d 649, 654 (2d Cir. 2004)(quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).  To establish a substantive due process violation, a plaintiff must point to "governmental conduct that 'is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Velez v. Levy, 401 F.3d 75, 93 (2d Cir. 2005) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998)).

### ii.    Albright and Reynolds

Defendants seek dismissal of the due process claims raised against Defendants

8

Albright and Reynolds.  As explained above, Plaintiff complains that Albright testified falsely against him at the disciplinary hearing.  He acted purposefully, Plaintiff claims, intending to deprive him of his right to due process.  Plaintiff also alleges that Reynolds prepared a false misbehavior report and then testified falsely against him out of a desire to punish him.  Defendants contend that these allegations fail to state a claim and are also too vague and conclusory to answer or to determine whether Defendants' alleged actions actually caused Plaintiff harm.

"In general, a 'prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest.'" Willey v. Kirkpatrick, 801 F.3d 51, 63 (2d Cir. 2015)(quoting Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986)).  Two exceptions to this rule exist: "when an inmate is 'able to show either (1) that he was disciplined without adequate due process as a result of the report; or (2) that the report was issued in retaliation for exercising a constitutionally protected right.'" Id. (quoting the Joint Appendix on appeal, which cites to Freeman, 808 F.2d at 951-53, and Franco v. Kelly, 854 F.2d 584, 589-90 (2d Cir. 1988)).  A prisoner facing "serious . . . discipline" is entitled to "'advance written notice of the claimed violation and a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken.'" Id. at 64 (quoting Wolff, 418 U.S. at 563).  An inmate must also "'be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals.'" Id. (quoting Wolff, 418 U.S. at 566).

The allegations summarized above, taken as true, establish only that Albright testified falsely about the paper they allegedly found and that Reynolds testified falsely and

wrote a false report.  Plaintiff does not allege that this false testimony came in retaliation for Plaintiff's exercise of his rights.  Plaintiff also does not allege that any Defendant denied him the process he was due in that particular setting.[2]  He complains that Albright and Reynolds testified falsely, but he does not allege any facts about that indicate a defect in procedure in his disciplinary hearing.  He describes the process, but does not describe the notice he received or allege that he could not call witnesses or present a defense.  Without such allegations, the Court must find that the false testimony and false report did not lead to a violation of Plaintiff's procedural due process rights.

Plaintiff also suggests that Defendants Albright and Reynolds violated his rights by failing to investigate claims before bringing charges.  Courts have found, however, that "inmates are not constitutionally entitled to an investigation of any kind by government officials."  JCG v. Ercole, No. 11-cv-6844, 2014 U.S. Dist. 57417 at *123 (S.D.N.Y. April 24, 2014); see also, Ismael v. City of New York, No. 17cv1825, 2018 U.S. Dist. LEXIS 149648 at *12 (S.D.N.Y. Sept. 28, 2018) ("There is no clearly established law suggesting due process further requires that prison officials conduct an investigation of the underlying claim.  To the contrary, district courts have repeatedly held that failure to independently investigate the source of a charge does not rise to a due process violation.").  "In order for a constitutional violation to have occurred, the investigation itself must have resulted in the deprivation of a constitutional right."  Id.  Plaintiff therefore has no due process claim

---

[2]The Complaint appears to admit that some reliable evidence existed, and Defendants declare such an admission fatal to the claim.  The hearing testimony described in the complaint indicates that there was evidence before the Court that the paper with drug-smuggling plans existed at some point, and that Plaintiff had some relationship with Guico.  Plaintiff appears to allege, however, that Defendants fabricated that evidence, and that it was not reliable.

related to any failure to investigate by Albright and Reynolds, and the Court will grant the motion in this respect as well.

As for any substantive due process claims, the Court finds that Plaintiff has not alleged that Defendants engaged in an conduct that would shock the contemporary conscience and establish a substantive due process claim.  Plaintiff makes no allegations on motive, and the conduct he alleges–falsifying disciplinary reports–does not even on its own constitute a constitutional violation.  As such, the Court cannot find "governmental conduct that 'is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Velez, 401 F.3d at 93.

### iii.    Bryant

Defendants also seek dismissal of any claims against Defendant Bryant, who conducted the disciplinary hearing.  They argue that Plaintiff has not alleged he was deprived any of the due process rights listed above at the hearing.  Instead, the Complaint alleges that Plaintiff received notice of the hearing, and opportunity to call witnesses, and a written decision from Bryant.  They also contend that Plaintiff cannot prevail on any claim that Bryant violated his rights by failing to investigate his claims independently, as he has no right to demand such an investigation.

 "[J]udicial review of the written findings required by due process is limited to determining whether the disposition is supported by 'some evidence.'" Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004) (quoting Superintendent v. Hill, 472 U.S. 445, 455 (1985)).  That "standard is extremely tolerant and is satisfied if 'there is any evidence in the record that supports' the disciplinary ruling."  Id. (quoting Fiedl v. City of New York, 210 F.3d 79, 85 (2d Cir. 2000).  Still, "the 'some evidence' standard requires some 'reliable evidence.'" Id.

11

(quoting Luna v. Pico, 356 F.3d 481, 488 (2d Cir. 2004)).

The Court finds that Plaintiff has failed to state a claim that his hearing lacked due process.  The allegations outlined above indicates that testimony at the hearing led to a factual dispute about the piece of paper allegedly containing drug-smuggling plans and Plaintiff's connection to those plans.  Several inmates testified that they never saw Plaintiff with the paper, but Defendant Albright allegedly testified that he had seen Plaintiff with the paper and Defendant Reynolds testified that he understood the paper to contain the plans alleged.  While Plaintiff claims this testimony was false, that evidence of record satisfies the evidentiary standard for such hearings.  Plaintiff has not alleged a due process violation when he admits there was evidence upon which Defendant Bryant could have based his decision.

Plaintiff also complains that Bryant failed to conduct any investigation into the source of the paper in question, whether Goico had been disciplined for the same material at another DOCCS facility, and whether Plaintiff had any connection to the material.  Complt. at ¶¶ 31, 36-38.  This allegation fails to state a claim as well, since an inmate "ha[s] no right to an independent investigation by the hearing officer."  Jackson v. Yando, No. 9:13cv1279, 2016 U.S. Dist. LEXIS 6627 at *22 (N.D.N.Y. Jan. 19, 2016); see also, Bolden v. Alston, 810 F.2d 353, 358 (2d Cir. 1987) (doubtful that having a hearing officer serve as investigator would comply with due process); Robinson v. Brown, No. 9:11-cv-0738, 2012 U.S. Dist. LEXIS 183782 at *17-18 (N.D.N.Y. Nov. 1, 2012) (hearing officer's failure to investigate the charges "does not suggest bias on his part.  Indeed, had he conducted an investigation . . . and then presided over the ensuing hearing, that dual role could have been viewed as running afoul of the Fourteenth Amendment's due process

guaranty.")).   Plaintiff has therefore failed to state a claim against Defendant Bryant, and the Court will grant the motion to dismiss in this respect as well.

### iv.     Joslyn, Ward, and Doe

Defendants also seek dismissal of the claims against Defendants Joslyn, Ward, and Doe, alleging that Plaintiff has not alleged facts which make their liability possible.  Plaintiff responds that, "[b]ased on the points of law set forth in Defendants' Memorandum of Law in Support of the Motion to Dismiss, Plaintiff hereby withdraws all claims as to Defendants Joslyn, Ward, and Doe."  Based on that representation, the Court will grant the motion with respect to these Defendants with prejudice.

### B     Fourth and Eighth Amendment Claims

Plaintiff casts his claims as violations of his due process rights under the Fourth, Eighth, and Fourteenth Amendments.  He makes no effort to explain how the Fourth and Eighth Amendments apply here, as they do not contain any provisions guaranteeing due process.  He does not allege that he was searched, or that he had any privacy interest in the search of other inmates.  The Court will grant the motion to dismiss with respect to any claims brought pursuant to the Fourth Amendment as unopposed.  Such claims are dismissed with prejudice.

As to the Eighth Amendment's prohibition on cruel and unusual punishment, "'[a] plaintiff asserting an Eighth Amendment claim pursuant to 42 U.S.C. § 1983 must meet two requirements.  First, the alleged deprivation must be, in objective terms, sufficiently serious.  Second, the charged official must act with a sufficiently culpable state of mind.'" Hurd v. Fredenburgh, 984 F.3d 1075, 1084 (2d Cir. 2021)(quoting Francis v. Fiacco, 942

F.3d 126, 130 (2d Cir. 2019)).  As to the first element, the Eighth Amendment prohibits more than just "'physically barbarous punishments.'"  Id. (quoting Hutto v. Finney, 437 U.S. 678, 685 (1978)).  The Amendment also "prohibits penalties that are greatly disproportionate to the offense, as well as those that transgress today's broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'"  Id. (quoting Hutto, 437 U.S. at 685).  As to the second element, a plaintiff must show "'a state of mind that is the equivalent of criminal recklessness.'"  Id. (quoting Francis, 942 F.3d at 130).  Liability attaches only when officials engage in a "'deliberate infliction of punishment, and not an ordinary lack of care for prisoner interests or safety[.]'"  Id. (quoting Francis, 942 F.3d at 130).

The Second Circuit has concluded that "unauthorized detention of just one day past an inmates mandatory release date qualifies as a harm of constitutional magnitude" under this element of the Eighth Amendment test.  Id. at 1085.  Such unauthorized detention can include detention beyond the date an inmate must be released as a result of good time credit.  Id.  New York law requires makes "conditional release mandatory upon the approval of good time credit and the inmate's request for release."  Id.  The Second Circuit has concluded, based on the mandatory nature of release on this basis in New York law, continued detention for a person entitled to release under the law is "neither authorized by law nor justified by any penological interest asserted by the State."  Id. at 1086.  A plaintiff who could show that prison officials held him with deliberate indifference to his right to be released could state an Eighth Amendment claim.

Plaintiff has not alleged facts sufficient to state a claim in this sense.  He has not alleged a sufficiently culpable state of mind.  He has alleged that Defendants knew that

they laid false allegations against him, but has not alleged that they acted with a deliberate intent to punish him. For those reasons, the Court will dismiss any Eighth Amendment claim the Defendant intends to bring.

### C.   Eleventh Amendment

Defendants seek dismissal of any claims against them in their official capacities, as such claims are the equivalent of claims against the State and prohibited by the Eleventh Amendment. "To the extent that a state official is sued for damages in his official cpacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." Ying Jing Gan v. New York, 996 F.2d 522, 529 (2d Cir. 1993). Plaintiff attempts to sue the Defendants, State employees, in their official capacities. He may not do so, and the motion to dismiss is granted in that respect.

### D.   Qualified Immunity

Defendants argue that, even if the Plaintiff had alleged constitutional violations, they would be entitled to qualified immunity. "Qualified immunity is an affirmative defense that shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Stephenson v. Doe, 332 F.3d 68, 76 (2d Cir. 2003) (quoting McCardle v. Haddad, 131 F.3d 43, 50 (2d Cir. 1997)). Qualified immunity also applies when "'it was 'objectively reasonable' for [the officer] to believe that [his or her] actions were lawful at the time of the challenged act.'" Betts v. Shearman, 751 F.3d 78, 83 (2d Cir. 2014) (quoting Jenkins v. City of New York, 478 F.3d 76, 87 (2d Cir. 2007)).

The Court here has found that Plaintiff has failed to allege any violations of his constitutional rights.  The Court need not, therefore, consider whether Defendants may invoke qualified immunity to avoid liability for the alleged constitutional violations,.  The Court declines to address the issue at this point.

### E.    Statute of Limitations

The Court would normally find, with the exception of Plaintiff's Fourth Amendment and official capacity claims, that Plaintiff is entitled to re-plead his claims because he may be able to add facts which would provide him with a plausible right to relief.  Here, however, Defendants contend that the Plaintiff's claims are barred by the three-year statute of limitations that apply to Section 1983 claims in New York.  All of the Defendant's conduct alleged in this case occurred more than three years before Plaintiff filed his claim, and the action is thus time-barred, Defendants claim.  Plaintiff responds that the statute of limitations did not begin to run until his case terminated favorably on January 14, 2017. Since he filed his case January 13, 2020, the three-year statute of limitations on Section 1983 claims in New York had not run.  If those claims are barred, then amending the Complaint would be futile.  The Court would then grant the Defendants' motion with prejudice.[3]

"The statute of limitations for § 1983 actions arising in New York is three years." Lucente v. City of Suffolk, 980 F.3d 284, 308 (2d Cir. 2020).  While state law determines

---

[3]Leave to "amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party."  Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008) (quoting Forman v. Davis, 371 U.S. 178, 182 (1962)).  If Plaintiff's claims are barred by the statute of limitations, amendment would be futile.

the length of the statute of limitations in such cases, "federal law governs the determination

of the accrual date (that is, the date the statute of limitations begins to run) for purposes of

the statute of limitations in a section 1983 action."  Ormiston v. Nelson, 117 F.3d 69, 71 (2d

Cir. 1997).  Under that standard, "the statute of limitations accrues 'when the plaintiff

knows or has reason to know of the injury which is the basis of his action.'"  Id. (quoting

Singleton v. New York, 632 F.2d 185, 191 (2d Cir. 1980)).

Plaintiff casts his claims as due process claims.  "'To present a due process claim, a

plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s)

deprived him of that interest as a result of insufficient process.'"  Ortiz v. McBride, 380 F.3d

649, 654 (2d Cir. 2004) (quoting Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001)).

"Prison discipline implicates a liberty interest when it 'imposes atypical and significant

hardship on the inmate in relation to the ordinary incidents of prison life.'"  Id. (quoting

Sandin v. Conner, 515 U.S. 472, 484 (1995)).

Here, any conceivable due process claim for the Plaintiff would be related to the

procedures used in the initial Tier III hearing, during Plaintiff's appeal to the Facility Time

Allowance Committee at Mid-State, and the decision denying his appeal by Defendant

Ward.  Plaintiff claims that the Defendants in these various proceedings ignored evidence,

refused to acknowledge contradictory statements, and acted with a purpose to punish him

and deny him good-time credits.  All of these proceedings concluded on December 13,

2016, and Plaintiff lost his good-time credit.  That meant he would remain in prison longer

than he had expected.  Assuming that Plaintiff had a liberty interest in his good-time credit,

he was aware that the Defendants had deprived him of that liberty interest through

improper procedures by December 13, 2016.  Since he did not file his Complaint until more

than three years after that date, his claims are barred by the statute of limitations if they are the Due Process claims he raises in his Complaint.  The same would be true were he to allege an Eighth Amendment claim based on the conduct of Defendants Bryant, Albright, and Reynolds.  All of that conduct occurred more than three years before he filed his Complaint.

In an attempt to avoid the statute of limitations, Plaintiff contends that he brings "fabrication of evidence" claims against the Defendants, and argues that such claims did not accrue until the proceedings against him terminated in his favor.  He relies on McDonough v. Smith, 139 S. Ct. 2149 (2019), to argue that his claims did not accrue until January 17, 2016, when he prevailed on his appeal. In McDonough, plaintiff alleged that the defendant had fabricated evidence against him and used that evidence to "pursue criminal charges[.]"  Id. at 2153.  Plaintiff alleged that the Defendant had secured a grand jury indictment against him by fabricating evidence.  Id. at 2154.  After McDonough's arrest, arraignment, and release, the case went to trial a year later.  Id.  Smith presented fabricated testimony at McDonough's trial, which ended in a mistrial after a month.  Id.  At the second month-long trial, Smith against elicited fabricated testimony.  Id.  A jury nonetheless acquitted McDonough.  Id.

After his acquittal, plaintiff sued a defendant who had allegedly fabricated the evidence against him.  Id.  The lower courts concluded that the statute of limitations had run on plaintiff's fabricated-evidence claim and dismissed the case.  Id.  The courts reached this conclusion because McDonough brought his claim more than three years after Smith laid his fabricated allegations against McDonough. The Supreme Court reversed, finding that "[t]he statute of limitations for a fabricated-evidence claim . . . does

18

not begin to run until the criminal proceedings against the defendant (i.e., the § 1983 plaintiff) have terminated in his favor."  Id. at 2155.  Noting that "[a]n accrual analysis begins with identifying 'the specific constitutional right' alleged to have been infringed,'" the Court identified that rights as the "'right not to be deprived of liberty as a result of the fabrication of evidence by a government officer,'" a claim that the Second Circuit treated as "arising under the Due Process clause." Id. (quoting Manuel v. City of Joliet, 580 U.S. ___, ___, 137 S. Ct. 911, 197 L.Ed. 312, 324 (2017).  The Court treated that right as the one at issue, though "without deciding that the Second Circuit's articulations of the right at issue and its contours are sound."  Id.

The Court further found that a fabricated-evidence claim is similar to a common-law malicious prosecution claim, which requires a termination in favor of the plaintiff before suit is possible.  Id. at 2156-57.   "[A] complete and present cause of action" that starts the running of the statute or limitations exists for that sort of claim "only once the criminal proceedings against [a plaintiff] terminate[s] in his favor."  Id. at 2159.  Common-law malicious prosecution, the Court found, shares concerns wtih Heck v. Humphrey, 512 U.S. 477 (1994), "rooted in pragmatic concerns with avoiding parallel criminal and civil litigation over the same subject matter and the related possibility of conflicting civil and criminal judgments."  Id. at 2157.  The favorable termination rule also "avoids allowing collateral attacks of criminal convictions through civil litigation."  Id.  Following that rule, the Court concluded, would also prevent criminal defendants from having to choose between "(1) letting their claims expire and (2) filing a civil suit against the very person who is in the midst of prosecuting them."  Id. at 2158.

Plaintiff argues that his claims are that Defendants Reynolds and Albright presented

false and fabricated evidence at his Tier III disciplinary hearing, and that Bryant improperly relied on that false and fabricated testimony in convicting him.  These actions led to him losing credit for his good time and kept him in prison longer than he should have been held.  Plaintiff argues that the disciplinary hearing was akin to a criminal prosecution and the rule in McDonough should apply.

The Supreme Court's decision in McDonough relied in part on the applicability of Heck to the case, though the case did not deal with prison conditions or discipline.  The Supreme Court has concluded, however, that "where success in a prisoner's § 1983 damages action would implicitly question the validity of conviction or duration of sentence, the litigant must first achieve favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence."  Muhammed v. Close, 540 U.s. 749, 751 (2004).  For that reason, Heck v. Humphrey, applies "in the circumstances of a § 1983 action claiming damages and equitable relief for a procedural defect in a prison's administrative process, where the administrative action taken against the plaintiff could affect credits toward release based on good-time served."  Id.  (citing Dewards v. Balisok, 520 U.S. 641 (1997)).  The Heck bar does not apply, however, when the "prisoner's challenge threatens no consequences for his conviction or the duration of his sentence."  Id.

The Second Circuit Court of Appeals has addressed Heck's favorable termination rule in relation to prison disciplinary proceedings.  "The case law is clear," the Circuit has stated, "that when a prisoner's challenge either to the process or the result of a prison disciplinary hearing implies the invalidity of a sanction that affects the duration of his sentence, such as the deprivation of good time credits, the prisoner may not maintain an

20

action under § 1983 unless he has shown that the sanction (or the procedures that led to it, if the procedural defect at issue was critical to the imposition of the sanction) have been overturned through administrative channels or by a state or federal court." Peralta v. Vasquez, 467 F.3d 98, 99 (2d Cir. 2006).  That Court has also concluded that Section 1983 can serve as a remedy for a plaintiff challenging the duration of his confinement when *habeas* relief is no longer available because the sentence has ended.  Huang v. Johnson, 251 F.3d 65, 75 (2d Cir. 2001); see also, Green v. Montgomery, 219 F.3d 52, 60 n.3 (2d Cir. 2000) ("We have held, however, that *Heck* acts only to bar § 1983 suits when the plaintiff has a habeas corpus remedy available to him (i.e., when he is in state custody.")).

Plaintiff's Complaint alleges that "[o]n or about December 7, 2016, the Mid-State Correctional Facility Time Allowance Committee reviewed this matter including Defendants [sic] Bryant's determination."  Complt. at ¶ 39.  Joslyn served as Chair of the Time Allowance Committee."  Id.  "Joslyn determined that Plaintiff Fava would lose all of the 'good time' that he had accumulated."  Id. at ¶ 40.  Ward "confirmed . . . Joslyn's recommendation that removed all of Plaintiff's . . . "good time" on December 13, 2016.  Id. at ¶ 41.  Plaintiff alleges that he had enough "good time" credits before these events to be scheduled for release on December 28, 2016.  Id. at ¶ 42.  He remained in prison after that date.

These allegations indicate that, as a result of the allegedly fabricated evidence used in Plaintiff's Tier III disciplinary proceeding, Plaintiff lost good time credit and remained in prison beyond the date of his expected release.  Under those circumstances, the Court could find that Plaintiff's challenge to the disciplinary proceeding involves a challenge to the duration of this sentence, and the Heck bar applies.  Since the Heck bar would then apply,

Plaintiff's fabricated-evidence due process challenge would likely be timely.  The Court recognizes Defendants' argument that Plaintiff has not alleged with sufficient clarity the relation between the Tier III hearing and the loss of good time credits and does not at this point decide whether Plaintiff has pled enough facts to make plausible his right to relief. The remaining Defendants may raise the issue again if Plaintiff files an amended complaint.

Because the Court finds that Plaintiff's claims related to the loss of good time credits are not time-barred, the Court's dismissal of Plaintiff's claims is without prejudice to repleading.  The Plaintiff may replead the claims that the Court has not dismissed with prejudice against Defendants Bryant, Albright, and Reynolds in their individual capacities. Defendants may make an appropriate response to any amended complaint and may reargue their qualified immunity defense as well.

## IV.    CONCLUSION

For the reasons stated above, Defendant' motion to dismiss, dkt. # 11, is hereby GRANTED with prejudice in part and GRANTED without prejudice to repleading in part. The motion is granted with prejudice with respect to any claims against Defendants Joslyn and Ward, with respect to any claims brought against the individual Defendants in their official capacities, and with respect to any Fourth Amendment claims.  The Clerk of Court is directed to terminate Joslyn and Ward from the litigation.  The motion is granted without prejudice to repleading with respect to Plaintiff's due process claims against the remaining Defendants. Plaintiff may also attempt to replead any Eighth Amendment claims agianst the remaining Defendants.  Plaintiff shall file any amended complaint within thirty days of the date of this order.  Plaintiff is advised that <u>an amended complaint **supersedes in all**</u>

**respects** the prior pleading.   Therefore, if the Plaintiff files an amended complaitn he **must properly allege the claims for which leave to re-plead has been granted and must properly re-allege the claims that have not been dismissed** by this Decision and Order.  The failure to file an amended complaint within this time frame will be deemed as an abandonment of any claims for which leave to re-plead has been granted and will result in judgment being entered against Plaintiff on these claims without further order of the Court.

**IT IS SO ORDERED.**

Dated:March 5, 2021

Thomas J. McAvoy
Senior, U.S. District Judge