**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JAMES P. FAVA,**

                            **Plaintiff,**

        v.                                          **9:20-CV-156**
                                                    **(TJM/TWD)**


**PARKER C. BRYANT, et al.,**

                            **Defendants.**
_____

**THOMAS J. McAVOY,**
**Sr. U. S. District Judge**

                    **DECISION & ORDER**

        Before the Court is Defendants' motion to dismiss Plaintiff's Amended Complaint.

See dkt. # 19.  The parties have briefed the issues and the Court will decide the motion

without oral argument.

**I.      BACKGROUND**[1]

        At the times relevant to this litigation, Plaintiff James P. Fava was an inmate at Mid-

State Correctional Facility ("Midstate"), an institution operated by the New York State

_____

        [1]The Court takes the facts in this section from Plaintiff's Amended Complaint.  In
this context, the court must "accept all 'well pleaded factual allegations' in the complaint as
true."  Lynch v. City of New York, 952 F.3d 67, 74-75 (2d Cir. 2020) (quoting Ashcroft v.
Iqbal, 556 U.S. 662, 679 (2009)).  While "allegations that are 'conclusory' and 'not entitled
to be assumed true, '[w]hen there are well-pleaded factual allegations, a court should
assume their veracity and determine whether they plausibly give rise to an entitlement of
relief[.]'" Id. at 75 (quoting Iqbal, 556 U.S. at 681, 679 (emphasis added in original)
(internal citations omitted)).

                                            1

Department of Corrections and Community Supervision ("DOCCS").  Amended Complaint ("Amend. Complt."), dkt. # 18, at ¶ 2.  Defendant Parker C. Bryant was an employee at Midstate.  Id. at ¶ 4.  Bryant served as Tier III Hearing Officer at Midstate.  Id. at ¶ 4. Defendant Floyd J. Reynolds worked as a Lieutenant at the facility.  Id. at ¶ 5.  Defendant Ryan A. Albright worked as a correction officer at Midstate.  Id. at ¶ 7.

On October 26, 2016, Defendant Reynolds prepared and issued a Tier III Inmate Misbehavior Report to Plaintiff.  Id. at ¶ 8.  The report alleged that on October 23, 2016, Defendant Albright had seen Plaintiff pass a piece of paper to another inmate, Pablo Goico.  Id.  Albright saw Goico tear that paper up and put the pieces in his shirt pocket.  Id. Goico turned the pieces of paper over to Albright, and Albright taped them back together. Id.  Albright claimed that the piece of paper he taped back together contained "a detailed scheme" for smuggling drugs into Midstate.  Id.  Someone at Midstate placed Plaintiff in the Special Housing Unit ("SHU"), a part of the prison often referred to as the "Box," as a consequence of these allegations  Id. at ¶ 9.  Plaintiff received the Tier III Inmate Misbehavior Report on or about October 28, 2016.  Id. at ¶ 10.  The report alleged that Plaintiff had (1) conspired to possess or sell narcotics and (2) been involved in smuggling. Id.

On November 1, 2016, Plaintiff appeared before Defendant Bryant for a Tier III disciplinary hearing.  Id. at ¶ 11.  Bryant read the charges to Plaintiff and asked him how he pled.  Id.  at ¶ 12.  Plaintiff denied all charges.  Id.  Bryant then adjourned the hearing until November 17, 2016 to facilitate taking testimony.  Id.  The facility recorded the hearing on tape.  Id.

Bryant reconvened the disciplinary hearing on November 17, 2016.  Id. at ¶ 13.  The

2

facility again recorded the session.  Id.  Defendant Reynolds gave testimony by telephone.

Id. ¶ 14.  Reynolds testified that Officers Albright and Wright gave him a piece of paper that

had been ripped up.  Id. at ¶ 15.  Reynolds opined that the paper contained "an elaborate

scheme to smuggle drugs into the facility."  Id.

Plaintiff alleges that Defendant Reynolds gave false testimony.  Id. at ¶ 16.  Plaintiff

contends that Reynolds "testified falsely without reviewing or investigating any of the

relevant and undisputed facts that favored Fava."  Id.  Plaintiff alleges that Defendant

Reynolds acted deliberately and "for the sole purpose of punishing Fava without

justification and to deprive him of his right to be free from cruel and unusual punishment

under the 8th Amendment of the United States Constitution."  Id.  Plaintiff testified and

denied any knowledge of the paper about which Reynolds spoke.  Id. at ¶ 16.  Plaintiff

denied he ever possessed the document.  Id.  Another inmate, Barber, testified that he was

near Plaintiff when he supposedly passed Goico the paper.  Id. at ¶¶ 18-19.  Barber stated

that he never saw paper passed by Plaintiff to Goico or anyone else.  Id. at ¶ 19.  Goico

testified that he had the paper when he was at Marcy Correctional Facility and been

disciplined for it.  Id. at ¶ 21.  The paper was in his pocket, torn up, and an officer

confronted him as he was trying to throw the paper in the trash.  Id.  Goico testified that he

had fist-bumped Plaintiff, not traded paper with him, and that Plaintiff had no knowledge of

the paper in question.  Id.  Plaintiff denies that Midstate disciplined Goico for the paper.  Id.

at ¶ 22.  Another inmate, Mashtare, also testified that he never saw Fava pass a piece of

paper or anything else to Goico.  Id. at ¶¶ 23-24.  Yet another inmate, Baston, also testified

that he saw Fava give Goico a fist bump but did not see him pass any paper.  Id. at ¶ 25.

Defendant Albright served as the last witness.  Id. at ¶ 26.  Albright testified that he

watched Fava pass a white piece of paper, folded up, to Goico on October 23, 2016.  Id.
Goico, Albright claimed, attempted to hide the paper.  Id. Plaintiff claims that this testimony
was false, and that Albright "testified falsely without reviewing or investigating any of the
relevant and undisputed facts that favored Plaintiff Fava."  Id. at ¶ 27.  Albright allegedly
acted deliberately and "for the sole purpose of punishing Plaintiff Fava without justification
and to deprive him of his right to substantive due process under the 4[th] Amendment and to
subject Fava to cruel and unusual punishment as is prohibited by the 8th Amendment of the
United States Constitution."  Id. at ¶ 28.  Plaintiff alleges that Reynolds and Albright knew
that Bryant would find Plaintiff guilty as charged based on their false testimony.  Id. at ¶ 29.
They also allegedly knew that Plaintiff would lose his good time credits and spend a
considerable amount of time in the SHU, even though his conduct was "relatively minor."
Id.  Plaintiff's alleged conduct "did not involve an escape attempt, assault on a correctional
officer or inmate, possession of a weapon or other serious offense," the sort of behavior
that normally merited such punishment.  Id.  Plaintiff also alleges that Reynolds and
Albright knew that the hearing decision would be affirmed by the Time and Allowance
Committee and the Superintendent.  Id. at ¶¶ 30-31.

No one produced the paper at the hearing, Plaintiff alleges.  Id. at ¶ 32.

After the testimony ended, Defendant Bryant recessed and then returned to the
hearing room to make a decision.  Id. at ¶ 33.  Bryant ruled that Fava and the other
inmates offered consistent testimony, but that Defendant Albright also offered "clear,
concise, and credible" testimony.  Id. at ¶ 34.  Bryant also found that the piece of paper in
question had "clear instructions on how to smuggle drugs into the facility."  Id. at ¶ 35.
Bryant came to this conclusion "without investigating Inmate Goico's testimony that he had

possessed" that paper while held at Marcy Correctional Facility before October 23, 2016. Id. at ¶ 36. Defendant Bryant, Plaintiff claims, "deliberately ignored" Goico's testimony solely "to punish Plaintiff Fava without justification" and "deprive him of his right to be free from cruel and unusual punishment that is prohibited by the 8th Amendment to the United States Constitution." Id. at ¶ 37. Plaintiff alleges that Bryant's failure to ask about the location of the paper at the hearing also served this alleged purpose. Id. at ¶ 38.

Bryant found Plaintiff guilty of all charges. Id. at ¶ 39. He recommended that Fava loss all of his accumulated good time. Id. Bryant decided that Plaintiff should be confined to the SHU for "an indeterminate length of time." Id. Plaintiff contends that such "punishment was entirely disproportionate" to Plaintiff's "alleged misconduct." Id. Plaintiff alleges that Bryant knew his recommendation would be upheld by the Time Allowance Committee, "even though Fava's alleged misconduct was relatively minor and did not involve an escape attempt, assault on a correctional officer or inmate, possession of a weapon or other serious offense." Id. at ¶ 41. Plaintiff spent 128 days in the SHU and lost all of his good time credit. Id. at ¶ 40.

On or about December 7, 2016, the Facility Time Allowance Committee at Midstate reviewed the matter and Bryant's conclusions. Id. at ¶ 42. That body concluded that Plaintiff should lose all the "good time" he had accumulated. Id. No review of "any of the relevant and undisputed facts that favored Plaintiff" took place. Id. at ¶ 43. The Committee, Plaintiff claims, acted deliberately "for the sole purpose of punishing Fava without justification and to deprive him of his right to substantive due process under the 4[th] Amendment and also to subject Fava to excessive punishment as prohibited by the 8th Amendment." Id. Joseph Ward, Midstate's Superintendent, confirmed the Committee's

5

recommendation of removing all of Plaintiff's good-time credit and holding him in the SHU on December 13, 2016. Id. at ¶ 44.   Before these events and decisions, Plaintiff had sufficient "good time" to expect he would be released from custody on December 28, 2016. Id. at ¶ 45.  Plaintiff remained incarcerated "well beyond" this date. Id. at ¶ 46.  Plaintiff contends that he had "a reasonable expectation to and a property interest in being required to serve a period of time in Special Housing Unit far less than the 128 days he actually served," and to be released from prison on December 28, 2016.  Id. at ¶¶ 47-48.

Plaintiff filed a timely Appeal to the Office of the Commissioner of DOCCS in Albany, New York Id. at ¶ 49.  On February 14, 2017, D. Venettozzi, Director of Special Housing/Inmate Disciplinary Program issued a Review of the Superintendent's hearing that reversed the outcome of the hearing.  Id. at ¶ 50.  Plaintiff contends that this finding "totally and completely exonerated" him "from the Tier III charges that ultimately caused him to be placed in SHU for approximately 128 days and also caused him to be incarcerated beyond his Conditional Release Date of December 28, 2016."  Id.  While held in the SHU, Plaintiff spen twenty-three hours per day confined "without any contact with other inmates, allowed only one hour per day outside of his cell for exercise with no contact with anyone else, no visitors except for attorney visits, limited mail privileges, no package or commissary privileges, [and] no access to reading material[.]"  Id. at ¶ 53.  He also could not participate in any of the programs available to inmates in the general population.  Id.

Plaintiff filed his initial Complaint on February 13, 2020.  Defendants filed a motion to dismiss after service of the Complaint.  The Court granted that motion with prejudice in part and without prejudice in part.  See dkt. # 17.  The Court permitted Plaintiff to file an amended complaint against the remaining defendants with respect to any due process

6

claims or Eighth Amendment claims against the remaining Defendants.  Plaintiff did so.
See dkt. # 18.  The Amended Complaint raises two counts.  Count One, brought pursuant
to 42 U.S.C. § 1983, alleges a "substantive due process" claim pursuant to the Fourth,
Eighth and Fourteenth Amendments against all Defendants.  Count Two alleges a "due
process" claim pursuant to the Fourth, Eighth, and Fourteenth Amendments against all
Defendants.

    Defendants then filed the instant motion to dismiss.  The parties briefed the issues,
bringing the case to its present posture.

## II.    LEGAL STANDARD

    Defendants have filed a motion to dismiss Plaintiff's claims pursuant to Federal Rule
of Civil Procedure 12(b)(6).  Defendant argues that Plaintiff has not stated a claim upon
which relief could be granted, even if all factual allegations in the complaint were proved
true.  In addressing such motions, the Court must accept "all factual allegations in the
complaint as true, and draw[] all reasonable inferences in the plaintiff's favor."  Holmes v.
Grubman, 568 F.3d 329, 335 (2d Cir. 2009).  This tenet does not apply to legal
conclusions.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the
elements of a cause of action, supported by mere conclusory statements, do not suffice."
Id. at 678.  "To survive a motion to dismiss, a complaint must contain sufficient factual
matter, accepted as true, to state a claim to relief that is plausible on its face."  Id. (quoting
Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)).  When, as here, the Plaintiff proceeds pro
se, the Court must "'construe [the complaint] broadly, and interpret [it] to raise the strongest
arguments that [it] suggests.'"  Weixel v. Bd. of Educ. of N.Y., 287 F.3d 138, 146 (2d Cir.
2002) (quoting Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000)).  "This is especially true

when dealing with pro se complaints alleging civil rights violations." <u>Id.</u>

**III.   ANALYSIS**

Defendants seeks dismissal on several grounds, which the Court will address in turn.

The Court must first determine exactly what claims the Amended Complaint raises. The Amended Complaint contains two counts.

Count One is titled "AS AND FOR A FEDERAL CLAIM OF DENIAL OF SUBSTANTIVE DUE PROCESS ALL IN VIOLATION OF THE FOURTH, EIGHTH, AND FOURTEENTH AMENDMENTS BROUGHT UNDER § 1983 BY PLAINTIFF FAVA AGAINST ALL DEFENDANTS."  Amend. Complt. at ¶ 55.  Plaintiff alleges that, "[a]s a result of the deliberate and intentional misconduct of Defendants," Plaintiff "was illegally, improperly and without justification placed in Special Housing Unit (soliatory confinement) beginning on October 23, 2016 until February 27, 2017 for a total of one hundred twenty-eight (128) days even though this exceeded his Conditional Release Date of December 28, 2016 by 62 days.  <u>Id.</u>  He contends that he "is entitled to be compensated for being improperly, illegally and unconstitutionally confined to the Special Housing Unit for 128 days."  <u>Id.</u> at 56.

Count Two is titled "AS AND FOR A FEDERAL CLAIM OF DENIAL OF DUE PROCESS ALL IN VIOLATION OF THE FOURTH, EIGHTH, AND FOURTEENTH AMENDMENTS BROUGHT UNDER § 1983 BY PLAINTIFF FAVA AGAINST ALL DEFENDANTS."  Plaintiff alleges that his release came on February 27, 2017, two months after his scheduled release date.  <u>Id.</u> at ¶ 58.  He contends that this delayed release came "[a]s a result of the deliberate, intentional misconduct of Defendants," he "was illegally,

improperly, and unconstitutionally placed in Special Housing Unit (solitary confinement) for 128 days without justification with 62 days of those being beyond his Conditional Release date."

The Court takes the two claims to be: 1) an Eighth Amendment claim that alleges cruel and unusual punishment as a result of Defendants' alleged scheme to use disciplinary proceedings to keep Plaintiff confined beyond his scheduled release date;[2] and 2) A due process claim arising out of the way that Defendants conducted the hearing.  As will be explained, the Court has already determined that no Fourth Amendment claim can lie under the circumstances.

The Court will therefore address Plaintiff's claims in turn.  The Court will begin with the Fourth Amendment claims and then separately address each of the counts, which appear to raise separate constitutional claims in each count.

### A.    Fourth Amendment Claims

Defendants argue that the Court should dismiss any Fourth Amendment claims. They point out that the Court earlier dismissed any such claims with prejudice, and therefore any new Fourth Amendment claims are improper.  Moreover, Defendants point out, the Amended Complaint contains no facts that would make an improper search or seizure plausible.

In addressing Defendants' first motion to dismiss, the Court concluded:

---

[2]Since the Eighth Amendment applies to this claim, the Court chooses to address this claim under the Eighth Amendment first, recognizing that "the Supreme Court cautions against expanding the substantive due process clause where a more specific Amendment provides a source for protection against government conduct."  Hurd v. Fredenburgh, 984 F.3d 1075, 1089 n.7 (2d Cir. 2021).  The Court will also briefly address Court One as a substantive due process claim in the interest of completeness.

> Plaintiff casts his claims as violations of his due process rights under the Fourth, Eighth, and Fourteenth Amendments.  He makes no effort to explain how the Fourth and Eighth Amendments apply here, as they do not contain any provisions guaranteeing due process.  He does not allege that he was searched, or that he had any privacy interest in the search of other inmates.  The Court will grant the motion to dismiss with respect to any claims brought pursuant to the Fourth Amendment as unopposed.  Such claims are dismissed with prejudice.

Dkt. # 17, at 13.

Because the Court dismissed any Fourth Amendment claims Plaintiff seeks to raise in this matter with prejudice, the Court will grant the motion to dismiss with respect to any Fourth Amendment claims raised in the Amended Complaint.  Those claims were dismissed with prejudice in the Court's earlier order.  To be clear, dismissing a claim with prejudice means that Plaintiff may no longer pursue such claims in an amended complaint.  The Fourth Amendment claims will again be dismissed with prejudice.

## B.    Count One of the Amended Complaint

Defendants seek dismissal of any Eighth Amendment claims.  The Court considers Count One of the Amended Complaint to be an effort to raise Eighth Amendment claims against all Defendants.  The Court dismissed any Eighth Amendment claims raised in the original Complaint, finding that:

> As to the Eighth Amendment's prohibition on cruel and unusual punishment, "'[a] plaintiff asserting an Eighth Amendment claim pursuant to 42 U.S.C. § 1983 must meet two requirements.  First, the alleged deprivation must be, in objective terms, sufficiently serious.  Second, the charged official must act with a sufficiently culpable state of mind.'" Hurd v. Fredenburgh, 984 F.3d 1075, 1084 (2d Cir. 2021)(quoting Francis v. Fiacco, 942 F.3d 126, 130 (2d Cir. 2019)).  As to the first element, the Eighth Amendment prohibits more than just "'physically barbarous punishments.'" Id. (quoting Hutto v. Finney, 437 U.S. 678, 685 (1978)).  The Amendment also "prohibits penalties that are greatly disproportionate to the offense, as well as those that transgress today's broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" Id. (quoting Hutto, 437 U.S. at 685).  As to the second element, a plaintiff must show "'a state of mind that is the equivalent of criminal recklessness.'" Id. (quoting Francis, 942 F.3d at 130).  Liability attaches only when

10

officials engage in a "'deliberate infliction of punishment, and not an ordinary lack of care for prisoner interests or safety[.]'" Id. (quoting Francis, 942 F.3d at 130). The Second Circuit has concluded that "unauthorized detention of just one day past an inmate's mandatory release date qualifies as a harm of constitutional magnitude" under this element of the Eighth Amendment test. Id. at 1085. Such unauthorized detention can include detention beyond the date an inmate must be released as a result of good time credit. Id. New York law requires makes "conditional release mandatory upon the approval of good time credit and the inmate's request for release." Id. The Second Circuit has concluded, based on the mandatory nature of release on this basis in New York law, continued detention for a person entitled to release under the law is "neither authorized by law nor justified by any penological interest asserted by the State." Id. at 1086. A plaintiff who could show that prison officials held him with deliberate indifference to his right to be released could state an Eighth Amendment claim.

Plaintiff has not alleged facts sufficient to state a claim in this sense. He has not alleged a sufficiently culpable state of mind. He has alleged that Defendants knew that they laid false allegations against him, but has not alleged that they acted with a deliberate intent to punish him. For those reasons, the Court will dismiss any Eighth Amendment claim the Defendant intends to bring.

Dkt. # 17 at 13-14.

In response to this finding, Plaintiff filed his Amended Complaint. The Amended Complaint repeats some allegations contained in the original Complaint and adds others regarding the conduct of the remaining Defendants. Plaintiff's original Complaint, for instance, alleged that Defendant Reynolds testified falsely at the Tier III hearing. See Complaint, dkt. # 1, at ¶ 19. According to Plaintiff, Reynolds "testified falsely without reviewing or investigating any of the relevant and undisputed facts that favored Plaintiff Fava." Id. That conduct, Plaintiff claimed, occurred "without justification and to deprive" Plaintiff "of his right to due process under the 4th Amendment[.]" Id. The Amended Complaint contains a nearly identical allegation. See Amend. Complt. at ¶ 16. Here, however, Plaintiff alleges that the conduct was "deliberate and done for the sole purpose of punishing Fava without justification and to deprive him of his right to be free of cruel and

11

unusual punishment under the 8th Amendment[.]"  Id.  Similarly, Plaintiff's original

Complaint described Albright's testimony at the hearing as false and offered "without

reviewing or investigating any of the relevant and undisputed facts that favored Plaintiff

Fava."  Complt. at ¶ 29.  Albright engaged in such behavior with the purpose of "punishing

Favre without justification and to deprive him of his right to due process under the Fourth

Amendment."  Id.  The Amended Complaint makes an identical allegation about the false

nature of the testimony.  Amend. Complt. at ¶ 27.  Rather than alleging only a Fourth

Amendment violation, however, Plaintiff contends that Albright's testimony violated the

Eighth Amendment.  Id. at ¶ 28.  He also alleges that Albright acted "for the sole purpose

of punishing" him "without justification."  Id.

The Amended Complaint also adds three allegations:

29.    Reynolds and Albright knew that, based on their false and fabricated testimony at the Hearing, Bryant would find Farva to be guilty as charged and that Bryant would further recommend that Fava lose all good time credits and serve a lengthy period in Special Housing Unit even though Fava's alleged misconduct was relatively minor in that it did not involve an escape attempt, assault on a correctional officer or inmate, possession of a weapon or other serious offense which would merit such punishment.

30.    Reynolds and Albright knew that Bryant's determination, which would be based on their false, misleading and fabricated testimony at the hearing, would be affirmed by the Time and Allowance Committee.

31.    Reynolds and Albright also knew that, upon Fava filing an appeal to the Superintendent, the Superintendent would affirm all of the determinations below.

Id. at ¶ 29-31.

In terms of Bryant's conduct, the two Complaints contain similar alterations:

37.    Defendant Bryant deliberately ignored Inmate Goico's testimony and assertions for the sole reason so as to punish Plaintiff without justification. Bryant's failure to investigate Goico's testimony was deliberate and done for

12

the sole purpose of punishing Plaintiff Fava and to deprive him of his right to due process under the 4th Amendment to the United States Constitution.

38.     During the Tier III Disciplinary Hearing, Defendant Bryant never inquired of either Defendant Reynolds or Defendant Albright as to the location of the subject piece of paper and why it was not produced at the hearing.  The omission was deliberate and done for the sole purpose of punishing Plaintiff Fava without justification and to deprive him of his right to due process under the 4th Amendment to the United States Constitution.

Complt., at ¶ 37-38.

The Amended Complaint offers slightly different allegations:

37.     Bryant deliberately ignored Goico's testimony and assertions for the sole reason so as to punish Fava without justification.  Bryant's failure to investigate Goico's testimony was deliberate and done for the sole purpose of punishing Fava and depriving him of his right to be free from cruel and unusual punishment that is prohibited by the 8th Amendment to the United States Constitution.

38.     During the Tier III Disciplinary Hearing, Bryant never inquired of either Reynolds or Albright as to the location of the subject piece of paper and why it was not produced at the hearing.  This omission was deliberate and done for the sole purpose of depriving Fava of his right to be free from cruel and unusual punishment as is prohibited by the 8th Amendment to the United States Constitution.

39.     Bryant found Fava guilty of all charges and recommended that Fava lose all of his accumulated good time.  Bryant also determined that Fava would then be confined to Special Housing Unit for an indeterminate length of time even though that punishment was entirely disproportionate for Fava's alleged misconduct.

Amend. Complt. at ¶¶ 37-39.

Defendants contend that the allegations in the Amended Complaint fail to state a claim because inmates have no constitutional right to be free from false allegations.  They further argue that these type of allegations are simply conclusory and fail to state a claim that makes plausible that Defendants acted with the sort of recklessness that would

13

amount to an Eighth Amendment violation.  They point out that no allegations in the

Amended Complaint demonstrate how Albright and Reynolds would even know that their

allegedly false allegations would lead to additional prison time for the Plaintiff.  Plaintiff

does not allege in sufficient detail how they allegedly know the decision that Bryant would

reach or that the Warden would uphold that decision.

As the Court explained in an earlier decision, Plaintiff must allege that Defendants

acted with a culpable state of mind when they allegedly testified falsely or, in Bryant's case,

made decisions that subjected Plaintiff to more prison time than he otherwise would have

served.  Plaintiff must allege non-conclusory facts that indicate that Defendants acted with

"a sufficiently culpable state of mind."  Hurd, 984 F.3d at 1084.  "'This standard requires

that only the deliberate infliction of punishment, and not an ordinary lack of due care for

prisoner interests or safety, lead to liability.'"  Id. (quoting Francis v. Flacco, 942 F.3d 126,

150 (2d Cir. 2019)).  Moreover, "[t]here must be 'a causal connection between the official's

response to the problem and the infliction of the unjustified detention,' and if [the

defendant] could not do anything about [plaintiff's] prolonged detention as a matter of law,

then any deliberate indifference on [his] part would likely be irrelevant."  Id. at 1086.

Plaintiff's Amended Complaint seeks to avoid the pleading problems in the original

Complaint by adding conclusory and formulaic accusations that simply state the elements

of an Eighth Amendment claim.  He alleges animus on the Defendants' part, and a

willingness to testify falsely, but, as before he does not allege any particular state of mind

that would lead to liability.[3]  Without more, the Court must again find that Plaintiff has failed

---

[3]Defendants point out that their alleged false testimony, without more, would not
violate Plaintiffs' rights.  "In general, a 'prison inmate has no constitutionally guaranteed

to allege facts which make plausible that he has a right to relief.  In addition, Plaintiff has not sufficiently alleged causation because he has not alleged that Defendants themselves acted with the authority to extend his prison time.  Albright and Reynolds, he alleges, knew that their testimony would increase his prison term, but nothing in his Amended Complaint indicates that they had any authority to extend that time.  The Amended Complaint does not allege any sort of conspiracy between those Defendants and any person who had such authority, if that person existed.  As for Bryant, Plaintiff's Amended Complaint offers no more than a conclusory accusation as to state-of-mind, and the Amended Complaint's allegations of Bryant's conduct at worst show that he made the wrong decision, not that the evidence was so clear that he acted with any sort of culpable intent.  As with the original Complaint, the Amended Complaint does not allege sufficient facts to make an Eighth Amendment claim plausible.

Plaintiff may attempt to raise a due process claims related to the accusations brought against him by Albright and Reynolds.  As a general matter, two types of due process rights exist in the Constitution: procedural and substantive due process.  The Court will address due process with reference to the Tier III administration hearing, discussed below.  Plaintiff may intend to raise a substantive due process claim with respect to the conduct of the Defendants before the hearing.  To establish a substantive due

---

immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest.'" Willey v. Kirkpatrick, 801 F.3d 51, 63 (2d Cir. 2015)(quoting Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986)).  Two exceptions to this rule exist: "when an inmate is 'able to show either (1) that he was disciplined without adequate due process as a result of the report; or (2) that the report was issued in retaliation for exercising a constitutionally protected right.'" Id. (quoting the Joint Appendix on appeal, which cites to Freeman, 808 F.2d at 951-53, and Franco v. Kelly, 854 F.2d 584, 589-90 (2d Cir. 1988)).

process violation, a plaintiff must point to "governmental conduct that 'is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Velez v. Levy, 401 F.3d 75, 93 (2d Cir. 2005) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998)).

To the extent that Plaintiff seeks to bring a substantive due process claim based on the Defendants' conduct leading up to the hearing, that claim must also fail. He has not alleged any behavior that "shocks the contemporary conscience" and establishes a substantive due process claim. Plaintiff essentially repeats his previous claims, adding that such conduct violates the Eighth Amendment. The conduct he alleges–testifying falsely at a disciplinary proceeding or issuing a false report in a prison investigation–does not even on its own constitute a constitutional violation. As such, the Court cannot find "governmental conduct that 'is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Velez, 401 F.3d at 93. To the extent that Plaintiff alleges a substantive due process claim due to Defendants' conduct in bringing allegedly false charges and testifying falsely at the disciplinary hearings, the Court will grant the motion.

The Court will therefore grant the Defendants' motion with respect to Count One.

### C.    Count Two

As explained, the Amended Complaint's second count appears to allege a deprivation of Plaintiff's due process rights specifically related to conduct at the hearing, where Plaintiff claims that the Defendants introduced false information about his conduct. As explained, "[a] prisoner does not have a due process right to a hearing before he may be deprived of a liberty interest on the basis of a misbehavior report." Boddie v. Schneider,

16

105 F.3d 857, 862 (2d Cir. 1997). Two "exceptions" to this rule exists: "when an inmate is 'able to show either (1) that he was disciplined without adequate due process as a result of the report; or (2) that the report was issued in retaliation for exercising a constitutionally protected right.'" Willey, 801 F.3d at 63 (quoting joint appendix on appeal, which in turn cites Freeman, 808 F.2d at 951-53). Adequate due process "must meet 'the minimum requirements of procedural due process appropriate for the circumstances.'" Id. at 64 (quoting Wolff v. McDonnell, 418 U.S. 539, 558 (1974)). Here, due process includes "'advance written notice of the claimed violation and a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken.'" Id. (quoting Wolff, 418 U.S. at 563). An inmate must also be permitted to "'call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals.'" Id. (quoting Wolff, 418 U.S. at 566). The dangers to "institutional interests," however, mean that an inmate is not entitled to exercise the right to "confrontation and cross-examination." Id. (internal citations omitted).

Due process also requires that "'the findings of the prison disciplinary board are supported by *some evidence* in the record." Luna v. Pico, 356 F.3d 481, 487-488 (2d Cir. 2004) (quoting Superintendent v. Hill, 472 U.S. 445, 454 (1985)). To meet this standard, "such disciplinary determinations [must] be supported by some '*reliable'* evidence of guilt." Elder v. McCarthy, 967 F.3d 113, 129 (2d Cir. 2020) (quoting Luna, 356 F.3d at 488). A hearing officer may not merely "'ratify the bald conclusions of others[.]'" Id. (quoting Sira v. Morton, 380 F.3d 57, 80 (2d Cir. 2004)). Instead, the hearing officer must make "'some inquiry to determine wether the totality of facts and circumstances reasonably supports the

17

proffered conclusion.'" Id. (quoting Sira, 380 F.3d at 80).

Plaintiff might also have a due process claim for this conduct if he could prove that the "false misconduct charges" came "as retaliation for his exercise of a constitutional right such as petitioning the government for redress of his grievances[.]" Jones v. Coughlin, 45 F.3d 677, 680 (2d Cir. 1995). Plaintiff offers no such allegations, and the motion will be granted in this respect as well.

Plaintiff's Amended Complaint alleges that he appeared before Defendant Bryant on November 1, 2016, where "Bryant read the charges to [Plaintiff] and then asked" Plaintiff how he plead. Amended Complt. at ¶¶ 11-12. Once Plaintiff denied the charges, "Bryant . . . adjourned the proceeding to November 17, 2016 for the purpose of taking testimony." Id. at ¶ 12. On November 17, 2016, Bryant presided over the disciplinary hearing. Id. at ¶ 13. Reynolds and Albright testified, as did Plaintiff and four other inmates. Id. at ¶¶ 14-26. Plaintiff alleges that, upon conclusion of the testimony, Bryant took a brief recess and then returned with his decision. Id. at ¶¶ 33-34. Plaintiff alleges that Bryant returned with a decision that found that he and the other inmate witnesses had offered consistent testimony concerning the events in question, but also found Defendant Albright's testimony "clear, concise, and credible." Id. at ¶ 34. Bryant found that the paper in question "gave clear instructions on how to smuggle drugs into the facility." Id. at ¶ 35. Plaintiff contends that Bryant reached this conclusion "without investigating Inmate Goico's testimony that he had possessed the exact same piece of paper at Marcy Correctional Facility" before the date in question. Id. at ¶ 36.

Plaintiff's Amended Complaint admits that he had advanced notice of the charges against him, an opportunity to present witnesses, and a written statement of the decision of

the hearing examiner.  In that sense, Plaintiff has failed to state a due-process claim with reference to the conduct of the hearing.  He received all the process he was due.  Plaintiff does not allege that Defendants instigated the disciplinary report because Plaintiff engaged in some sort of protected activity, and Plaintiff therefore fails to state a due process claim in that respect either.

Plaintiff argues instead that Defendants violated his due process rights because he did not have an "opportunity to examine the note and cross-examine Reynolds and Albright regarding the authenticity of the note and how they came in possession of it."  Plaintiff's Amended Complaint does not allege that he lacked the opportunity to cross examine, the Amended Complaint simply contends that the two Defendants testified.  In any case, due process includes the right to present evidence, but not cross-examination.  See Sira, 380 F.3d at 69 ("there is no right to counsel or to confrontation at prison disciplinary proceedings.").  Plaintiff further contends that "after Reynolds and Albright both testified as to the note, Bryant never once inquired of Reynolds or Albright as to the missing note." Plaintiff's complaint, therefore, is that Bryant did not conduct a thorough investigation. Such an allegation does not state a due-process claim.  An inmate "ha[s] no right to an independent investigation by the hearing officer."  Jackson v. Yando, No. 9:13cv1279, 2016 U.S. Dist. LEXIS 6627 at *22 (N.D.N.Y. Jan. 19, 2016); see also, Bolden v. Alston, 810 F.2d 353, 358 (2d Cir. 1987) (doubtful that having a hearing officer serve as investigator would comply with due process); Robinson v. Brown, No. 9:11-cv-0738, 2012 U.S. Dist. LEXIS 183782 at *17-18 (N.D.N.Y. Nov. 1, 2012) (hearing officer's failure to investigate the charges "does not suggest bias on his part.  Indeed, had he conducted an investigation . . . and then presided over the ensuing hearing, that dual role could have

19

been viewed as running afoul of the Fourteenth Amendment's due process guaranty.").

In the end, Plaintiff appears to claim that Bryant lacked reliable evidence for his conclusions, in part because he allegedly did not examine the paper in question.  Plaintiff's Amended Complaint admits, however, that Bryant heard testimony from the two guards who allegedly found the paper, the inmate who allegedly originally possessed the paper, and other inmates who allegedly witnessed the events in question.  The Amended Complaint also makes clear that, after hearing this testimony, Bryant reached a conclusion. The Court finds that the facts alleged in the Amended Complaint indicate that Bryant undertook "'some inquiry to determine whether the totality of the facts and circumstances reasonably supports the proffered conclusion.'"  Elder, 967 F.3d at 129-30 (quoting Sira, 380 F.3d at 80).  Plaintiff alleges that Bryant did not fully investigate the paper in question and did not accept Goico's claim that he had possessed the paper while confined at another facility.[4]  The Court finds that such alleged failings are insufficient to make plausible a claim that Bryant lacked evidence to support his findings.  Plaintiff's allegations make clear that Bryant had to make credibility determinations and weigh conflicting testimony.  That he did so in ways with which Plaintiff–and those who evaluated Bryant's decision on appeal–disagreed, does not make out a claim that Bryant lacked reliable evidence for his conclusion.

Plaintiff raises this count against all defendants.  He includes Albright and Reynolds in this count, even though they did not render the decision which he claims injured him. Instead, Plaintiff appears to allege that Albright and Reynolds violated his due process

---

[4]The Court agrees with Defendants that Goico's story is incredible.

20

rights by testifying falsely at the disciplinary hearing.   As explained, Plaintiff has no constitutional right to be free of false disciplinary charges. <u>Willey</u>, 801 F.3d at 63.  He has also failed to plead either of the exceptions to the rule, a lack of due process or retaliation. Defendants' testimony, even if false, does not give rise to a claim.

The Court will therefore grant the Defendants' motion on this claim as well.

**D.     Leave to Amend**

The Court has previously granted Plaintiff leave to amend his Complaint and attempt to state claims upon which relief could be granted.  He did not do so in his second attempt.  The Court will therefore dismiss Plaintiff's claims with prejudice.[5]

**IV.     CONCLUSION**

For the reasons stated above, Defendants' motion to dismiss, dkt. # 19, is hereby GRANTED with prejudice.  The Clerk of Court is directed to CLOSE the case.

**IT IS SO ORDERED.**

Dated: February 7, 2022

Thomas J. McAvoy
Senior, U.S. District Judge

---

[5]The Defendants repeat an earlier argument concerning the statute of limitations. In light of the Court's findings here, the Court declines to address that argument again. The Court would in any case rely on its earlier findings on that matter.  The Court recognizes that Defendants did not abandon that argument in responding to this version of the Complaint, however.

21